UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DENNIS STRUTTON, | ) |
| Plaintiff, | ) |
| vs. | ) No. 4:04-CV-1735 (CEJ) |
| LISA HELMS, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Before the Court is defendant's motion for summary judgment. Plaintiff has not responded and the time allowed for doing so has expired.

Plaintiff Dennis Strutton brings this action pursuant to 42 U.S.C. § 1983. Plaintiff has been civilly committed as a sexually violent predator and is confined at the Missouri Sexual Offender Treatment Center ("MSOTC") in Farmington, Missouri. At the time of the incident giving rise to this lawsuit, defendant Lisa Helms was employed at the MSOTC as a security aide. Plaintiff claims that the defendant issued a violation report and sanctioned him, in violation of his rights to due process under the Fifth and Fourteenth Amendments. He seeks monetary and injunctive relief.

**I. Background**

MSOTC is a residential facility for persons civilly committed as sexually violent predators or persons detained pending a determination of whether they are sexually violent predators. The residents have either been convicted of sex crimes or found not guilty by reason of insanity. There are various phases and levels

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

that MSOTC residents must progress through to acquire skills and tools to prevent sexual re-offending. In Phase I, there are three levels for a sex offender to complete. Phase I addresses the negative antisocial attitudes and dysfunctional relationship styles that sex offenders bring to treatment. According to the affidavit of MSOTC psychologist Alan Blake:

> Phase I treatment goals involve the resident: 1) developing the recognition of the legitimate authority of the treatment team and society as a whole and 2) developing the ability to accept and follow program and broader social rules of correct behavior, 3) taking responsibility for his rule-violating actions and accepting reasonable sanctions for that behavior, and 4) recognizing of the value of sexual offender treatment and its goals.

MSOTC residents who have difficulty meeting the expectations of the levels system are assigned to the Readiness Ward. The residents of that ward do not have automatic privileges. Instead, they are given tokens for positive behavior which they can exchange for certain privileges. For example, tokens are issued to residents for brushing their teeth, making their beds and for performing other simple tasks. Residents may also receive tokens for respectful behavior and for their participation in therapeutic group sessions. On a given day, a Readiness Ward resident was eligible to earn from 31 to 46 tokens.

According to the affidavit of MSOTC psychologist Linda Meade, "The belief is that the resident assigned to the Readiness Ward will begin to develop self-control over his problematic behaviors and eventually earn the opportunity to return to a levels system ward and continue his treatment program." To advance from the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Readiness Ward to Level 2, a resident must: (1) during a six-month period, receive three or fewer violations, and the final three months of the six-month period must be violation free; and (2) earn 95% of all available tokens for three consecutive months.

The rules of the Readiness Ward are stricter and broader than those of other treatment levels. Moreover, the rules are applied consistently and the consequences of a violation are imposed swiftly, as the MSOTC treatment staff has concluded that behavioral changes can be brought about more quickly with this approach. Additionally, according to Blake, "[d]elay can be interpreted as weakness, and escalate behavior in the future." If a resident violates a rule of the treatment center, then he may be penalized by the loss of tokens. The number of tokens lost depends on the severity of the violation. Thus, "minor" violations result in a loss of 40 tokens, "major" violations result in a loss of 90 tokens, and "intolerable" violations are punished by a loss of 150 tokens.

On November 14, 2004, plaintiff, a resident of the Readiness Ward, was issued four violation reports within a 35-minute period. The first report, which is the subject of this action, was written by defendant. In the report, defendant wrote that plaintiff had committed the rule violation of "manipulation" which she classified as a "major" violation. In the report, defendant described the violation as follows: "Resident upset over losing group tokens. He came to the nurses station demanding we call an RN IV and stating, 'Lock me down, put me in PI.' 'You all are a bunch of fuckin

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

nuts.'" The three subsequent violation reports plaintiff received were issued by other MSOTC staff, and all were classified as "minor" violations. Before November 14, 2004, plaintiff had 90 tokens; he lost all of them as a result of the major violation. The "minor" violations did not cause any further loss of tokens.

When a violation report is issued, a member of the resident's treatment team reviews it the same day. In the instant case, the violation report was initially reviewed on November 14, 2004 by Lori Day, a member of plaintiff's treatment team. The report was reviewed again by the entire treatment team on November 15, 2004.[1] If a resident feels that the violation report is unjust, he can seek review through the grievance procedure or he may submit a request for expungement of the violation. Plaintiff did not request expungement of any of the violations.

## II. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the

---

[1] The treatment team was composed of a charge nurse, at least one security aide, a recreation staff member and a support assistant or ward clerk who enters the violation into the system.

-4-

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

benefit of all reasonable inferences to be drawn from the underlying facts. Agristor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Citrate, 477 U.S. 317, 322 (1986).

**III. Discussion**

In the first amended complaint, plaintiff asserts that he was denied a hearing by a neutral decision maker, which was a violation of due process.

"Detainees, whether civil or criminal, do not 'possess the full range of freedoms' that non-detainees possess." Bradford v. Blake, 2006 WL 744307, at *4 (E.D. Mo. Mar. 23, 2006) (quoting Bell v. Wolfish, 441 U.S. 520, 546 (1979)). "It is well established that prisoners have only narrowly defined liberty interests, for

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

imprisonment necessarily retracts many of the liberties of the free." Lyon v. Farrier, 727 F.2d 766, 768 (8th Cir. 1984). While a civil detainee is not a prisoner, "his confinement is subject to the same safety and security concerns as that of a prisoner." Revels v. Vicenz, 382 F.3d 870, 874 (8th Cir. 2004). Consequently, a civil detainee's right to due process, like a prisoner's, is limited by the essential goals of "maintaining institutional security and preserving internal order and discipline." Bell, 441 U.S. at 546. Further, institutions "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve" these essential goals. Id. at 547.

Because of this deference, institutional disciplinary decisions which intrude on a liberty interest need only be supported by "some evidence" to satisfy due process requirements. See Superintendent v. Hill, 472 U.S. 445, 455 (1985). "The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id.

However, where "an inmate is deprived of privileges or placed in a special confinement status in order to punish him for past misconduct, then due process requires some kind of hearing beforehand." Jones v. Mabry, 723 F.2d 590, 594 (8th Cir. 1983).

-6-

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

On the other hand, institutional disciplinary actions which do not seek to punish, but which impose disabilities for administrative or regulatory purposes do not require the same level of procedural safeguards. Id. Any disciplinary decision which is "reasonably related to a legitimate governmental objective" is not, without more, punitive in nature. Bell, 441 U.S. at 539.

In Wolff v. McDonnell, 418 U.S. 539. 563-67 (1974), the Supreme Court held that a hearing, with an opportunity to present witnesses and evidence, may be required prior to the revocation of statutorily created good time credits. Because the loss of such credits may lengthen the period of imprisonment, the inmate has a strong interest in making sure that the credits are not deprived arbitrarily. Id. at 561. Notwithstanding this interest, the discretion given to prison officials is so broad that "it may be that a constitutional challenge to a disciplinary hearing based upon an inmate's right to call witnesses will rarely, if ever, be successful." Brown v. Fey, 889 F.2d 159, 167 (8th Cir. 1989)(internal citations omitted). Further, the loss of good time will not always, by itself, be a liberty interest which implicates due process. See Moorman v. Thalacker, 83 F.3d 970, 973 (8th Cir. 1996)("good time credits alone are not liberty interests").

While the loss of good time credits in Wolff implicated the inmate's liberty interests, some other types of disciplinary actions will result in, at most, only a *de minimis* intrusion, for which such procedural protections are not required. In Lyon v. Farrier, 727 F.2d 766, 768 (8th Cir. 1984), privileges of three

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Iowa state inmates already in protective custody were further reduced and they were placed in slightly smaller cells for five days due to a clerical error. The error occurred after the inmates were notified that they were under investigation for possibly planning an escape. The inmates sued under 42 U.S.C. § 1983, alleging deprivation of due process. The Lyon court weighed two factors in determining whether plaintiffs' due process rights were violated: (1) the severity of the loss of freedom and/or privileges, and (2) whether the official acts complained of were punitive rather than administrative in nature." Vaughn v. Stanton, 582 F. Supp. 248, 250 (W.D. Mo. 1984). Applying these factors, the court found that no liberty interest arose in the case. It noted that the inmates' losses were not severe, adding, "minor losses require relatively less procedural protection." Lyon at 768. It further found that the acts complained of were "minimally intrusive means of investigating a possible escape" and not punitive in nature. Therefore, the non-punitive investigation did not invoke procedural protection. Id.

After applying the Lyon factors to this case, the Court concludes that plaintiff suffered no deprivation of his right to due process right in connection with the violation report issued by defendant. With respect to the first factor, the loss resulting from the major violation report and the taking of the 90 tokens was *de minimis*. As a resident of the Readiness Ward, plaintiff was able to earn between 31 and 46 tokens each day for simple acts such as showering and making his bed. Plaintiff could have earned back

-8-

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

all 90 tokens in two days or, at most, three days.  Thus, the privileges afforded by the tokens could be easily regained depending on plaintiff's conduct.  Immediately after the major violation, plaintiff incurred three minor violations.  Thus, even if no major violation had been issued, plaintiff would have lost all 90 tokens for the minor violations.  As noted above, the defendant was not involved in the minor violations and plaintiff does not contest them here.  Finally, the major violation alone could not have prevented plaintiff from advancing to Level 2.

With respect to the second factor, the Court concludes that the actions taken here were administrative, not punitive, in nature.  The issuance of the violation and the prompt review that ensued were reasonably related to the legitimate government objective of rehabilitating sex offenders so that they do not relapse and re-offend. See Bradford v. Schoffman, 2006 WL 1391303, at *4 (quoting Kansas v. Hendricks, 521 U.S. 346, 368 n.4 1997) ("[W]ith regard to the nature of the treatment, the state 'enjoy[s] wide latitude in developing treatment regimens' for mental health patients.").  As discussed above, strict enforcement of treatment center rules and timely imposition of consequences for violations are key to achieving behavioral changes.  The action taken in this case was a "minimally intrusive" means of changing plaintiff's behavior toward the legitimate end of lessening the chances that he will re-offend. Because the violation was non-punitive, it did not invoke procedural protection, and no protected interest was involved. See Lyon, 727 F.2d at 768.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Further, plaintiff was given the process that MSOTC has in place for residents who receive violations. On the same day that the violation was issued, MSOTC supervisor Day reviewed the violation. Plaintiff's treatment team again reviewed the violation the next day and upheld it. However, plaintiff failed to seek the expungement of this violation. Thus, defendant and MSOTC followed the process in place for issuing and reviewing violations given to residents.

Finally, there is some evidence, even when viewing the record in the light most favorable to plaintiff, to support the disciplinary decisions of defendant and the MSOTC.

For the foregoing reasons, the Court concludes that no genuine issue of material facts exist and that defendant is entitled to judgment as a matter of law. Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#28] is **granted.**

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 28th day of August, 2006.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com